COFFMAN v. FEDERAL LABORATORIES,
Inc., et al. (UNITED STATES,
Intervenor).

Clv. No. 3289.

District Court, D. New Jersey.

March 31, 1944.

Carpenter, Gilmour & Dwyer, of Jersey City, N. J. (James D. Carpenter, Jr., of Jersey City, N. J., of counsel), for plaintiff.

Wall, Haight, Carey & Hartpence, and Milton, McNulty & Augelli, all of Jersey City, N. J. (Edward J. O'Mara and Thomas McNulty, both of Jersey City, N. J., of counsel), for defendant Breeze Corp.

B. Thorn Lord, U. S. Atty., of Newark, N. J., and Lester P. Schoene, Sp. Asst. Atty. Gen., for intervenor.

Before McLAUGHLIN, Circuit Judge, and FAKE and SMITH, District Judges.

SMITH, District Judge.

This is a civil action brought by the plaintiff Roscoe A. Coffman against the defendants Federal Laboratories, Inc., and Breeze Corporations, Inc., to enjoin the said defendants' alleged threatened compliance with two Royalty Adjustment Orders, the one (No. W-9) issued by the War Department, and the other (No. N-7) issued by the Navy Department, pursuant to and in accordance with the provisions of the Royalty Adjustment Act, 56 Stat. 1013-1015, 35 U.S.C.A. §§ 89–96. The defendant Federal Laboratories, Inc., although joined as a party, was not served with process and did not enter an appearance.

This suit, as it now stands, has for its only object injunctive relief against the defendant Breeze Corporations, and presents an anomalous situation. The plaintiff, without invoking the judgment of the Court on any other issues, challenges the constitutionality of the Royalty Adjustment Act and the validity of the Royalty Adjustment Orders issued thereunder, and prays injunctive relief. The defendant, although entering an appearance, neither denies the allegations that the Act is unconstitutional and the Orders are invalid nor resists the application for an injunction, but assumes a neutral position. The reason for this neutrality becomes apparent upon a reading of the facts hereinafter summarized. The only opposition is that offered by the United States, the intervenor.

The United States, having been permitted to intervene,[1] moved to dismiss the complaint on the grounds: first, that the Court lacked jurisdiction because of the failure of the complaint to state a justiciable controversy, and second, that the Court lacked jurisdiction to grant injunctive relief because of the want of equity. The Court, having reserved decision on the motion, proceeded to hear argument on the merits, but our decision on the motion makes consideration of the merits unnecessary.

A brief summary of the events which led to the present action will be conducive to a clear understanding, not only of the questions raised by the motion, but also of the reasons advanced by the Court in support of its decision.

The plaintiff, the sole owner of a series of patents covering inventions therein defined, under an agreement dated December 8, 1932, granted to the Federal Laboratories an exclusive license to manufacture, use, and sell the inventions. The said agreement fixed the "license fee or royalty" in an amount "equal to six percent (6%) of the * * * net selling price on all devices and parts thereof sold." The Federal Laboratories, under agreements dated April 28, 1937 and April 28, 1939, employed and engaged the defendant Breeze Corporations, as the "exclusive sales agent and distributor," to manufacture and sell the inventions.

On February 18, 1941 the plaintiff instituted an action in this court (Civil Action No. 1395) against Federal Laboratories and Breeze Corporations[2] in which he demanded, in addition to other relief, an accounting for royalties allegedly due and owing under the said license agreement and wrongfully withheld. The other issues raised in that action are not pertinent here and need not be discussed. The defendant Breeze Corporations, answering the complaint, denied any liability for royalties allegedly due and owing under the license agreement; Federal Laboratories, not having been served with process, did not answer. That action, hereinafter referred to as the law action, is still pending and awaiting trial.

---

[1] Act of August 24, 1937, c. 754, § 1, 50 Stat. 751, 28 U.S.C.A. § 401.

[2] Between July of 1937 and October of 1942, while the contracts were in force and effect, the defendant Breeze Corporations acquired all of the common stock and most of the preferred stock of the Federal Laboratories, and this stock it still owns.

While the law action was pending, the representatives of the War Department, pursuant to the provisions of the Royalty Adjustment Act, and particularly Section 1 thereof, 35 U.S.C.A. § 89, having determined that the fees and royalties payable to the plaintiff under the said license agreement on patented devices manufactured for and charged or chargeable to the said Department, either directly or indirectly, were unreasonable and excessive, adjusted the basis of compensation and fixed both the "rates and the amount" of royalties in amounts determined by them to be "fair and just." The terms and conditions of the adjustment were embodied in Royalty Adjustment Order No. W-9, the pertinent provisions of which are recited in the footnote.[3] The representatives of the Navy Department, following a like procedure, issued Royalty Adjustment Order No. N-7, in which identical terms and conditions were incorporated.

The Orders, in addition to modifying the basis of compensation, fixed the maximum sum payable to the plaintiff in each calendar year at $50,000 and directed that "the balance, in excess of the payments authorized * * *, of all royalties specified in the licenses * * * which were due to Licensor (plaintiff) and were unpaid on the effective date * * *, or since said date have or may hereafter become due to Licensor, on account of any manufacture, use, sale or other disposition of said inventions for the War Department or the Navy Department * * *", be paid to the Treasurer of the United States.

In December 1943, certified copies of these orders were served on all of the interested parties, to wit, Roscoe A. Coffman, Federal Laboratories, and Breeze Corporations. The present action followed. The defendant Breeze Corporations filed an answer in which it denied liability to either the plaintiff or the Treasurer of the United States, a position consistent with its stand in the earlier law action. The said defendant, however, asserted no right or defense predicated upon either the Orders or the Act, and did not controvert the plaintiff's allegations that the former were invalid and the latter was unconstitutional.

It is reasonably apparent, upon consideration of the facts and circumstances embraced within the pleadings and herein summarized, that as between the immediate parties to this action there is no "case" or "controversy", within the meaning of Article 3, Section 2, of the Constitution. The complaint does not invoke the judgment of the Court on the respective rights and liabilities of the parties, but invites only an adjudication on the constitutionality of the Statute and the validity of the Orders; such an adjudication is not essential to the determination of any right or interest asserted by the plaintiff and controverted by the defendant in this action. This defendant, as hereinabove stated, asserts no right

---

3 "(1) Fair and just rates and amounts of royalties for the manufacture, use, sale or other disposition of said alleged inventions are hereby determined, fixed and specified to be as follows:

"(a) Upon each starter sold to or for either the War Department or the Navy Department, the sum of Eight ($8) Dollars each, and

"(b) upon parts and cartridges sold to or for either the War Department or the Navy Department, no royalties; but not to exceed the sum of Fifty Thousand ($50,000) Dollars to be paid to Licensor in each calendar year commencing January 1, 1943 in respect of starters sold to or for the War Department and the Navy Department, added together.

"(2) Until further Order, Licensee is hereby authorized to pay to Licensor, on account of any manufacture, use, sale or other disposition of said alleged inventions for the War Department heretofore occurred, or hereafter occurring while Sections 1 and 2 of said Act re-

main in force, royalties at the rate and not to exceed the amount determined, fixed and specified in paragraph (1) hereof, and no more, under

"(a) the above-mentioned license agreement dated December 8, 1932, and

"(b) *     *     *     *     *

"(3) Licensee is hereby directed to pay over to the Treasurer of the United States, * * *, the balance, in excess of the payments authorized by paragraph (2) hereof, of all royalties specified in the licenses * * * referred to in paragraph (2) hereof which were due to Licensor and were unpaid on the effective date * * *, or since said date have or may hereafter become due to Licensor, on account of any manufacture, use, sale or other disposition of said inventions for the War Department or the Navy Department heretofore occurred or hereafter occurring while Sections 1 and 2 of said Act remain in force; and demand is hereby made for payment forthwith of so much of said balance as is now due to Licensor."

504

or defense predicated upon either the Act or the Orders, and offers no resistance to the application for injunctive relief. The "adverse legal interests" in the subject of inquiry requisite to a "case" or "controversy" are obviously absent. This defect is fatal to the jurisdiction of the Court. South Spring Hill Gold Co. v. Amador Medean Gold Co., 145 U.S. 300, 12 S.Ct. 921, 36 L.Ed. 712; Fairchild v. Hughes, 258 U.S. 126, 42 S.Ct. 274, 66 L.Ed. 499; Com. of Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, and other cases hereinafter cited.

■ The pleadings present nothing more than abstract questions, the answers to which, at least in this suit, are not determinative of the respective rights and liabilities of the immediate parties. The exercise of the judicial power does not extend to the determination of such questions. Liverpool, N. Y. & P. Steamship Co. v. Commissioner of Emigration, 113 U.S. 33, 5 S.Ct. 352, 28 L.Ed. 899; Chicago & Grand Trunk Railway Co. v. Wellman, 143 U.S. 339, 12 S.Ct. 400, 36 L.Ed. 176; People of State of California v. San Pablo, etc., Railroad Co., 149 U.S. 308, 13 S.Ct. 876, 37 L.Ed. 747; Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246; Keller v. Potomac Electric Power Co., 261 U.S. 428, 43 S.Ct. 445, 67 L.Ed. 731; Liberty Warehouse Co. v. Grannis, 273 U. S. 70, 47 S.Ct. 282, 71 L.Ed. 541. The interest of the plaintiff in the only subject of the purported controversy, the constitutionality of the Statute and the validity of the Orders, will not sustain this suit or support the jurisdiction of the Court in the absence of a real adverse interest therein maintained by the defendant. Ibid.

■ It is well settled that the judicial power, the power to adjudicate legal rights and pronounce judgment, vested in the courts by the Constitution, is limited to the determination of actual controversies between adverse litigants. The requirements of a justiciable controversy are clearly defined by the Supreme Court in Ætna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617, 108 A.L.R. 1000, in which it was stated: "The *controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.* South Spring Gold Co. v. Amador Gold Co., 145 U.S. 300, 301, 12 S.Ct. 921, 36 L.Ed. 712; Fairchild v. Hughes, 258 U.S. 126, 129, 42 S.Ct. 274,

275, 66 L.Ed. 499; Com. of Massachusetts v. Mellon, 262 U.S. 447, 487, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. See Muskrat v. United States, supra; [State of] Texas v. Interstate Commerce Comm., 258 U.S. 158, 162, 42 S.Ct. 261, 262, 66 L.Ed. 531; New Jersey v. Sargent, 269 U.S. 328, 339, 340, 46 S.Ct. 122, 125, 70 L.Ed. 289; Liberty Warehouse Co. v. Grannis, 273 U. S. 70, 47 S.Ct. 282, 71 L.Ed. 541; [State of] New York v. Illinois, 274 U.S. 488, 490, 47 S.Ct. 661, 71 L.Ed. 1164; Willing v. Chicago Auditorium Ass'n, 277 U.S. 274, 289, 290, 48 S.Ct. 507, 509, 72 L.Ed. 880; [State of] Arizona v. California, 283 U.S. 423, 463, 464, 51 S.Ct. 522, 529, 75 L.Ed. 1154; [State of] Alabama v. Arizona, 291 U.S. 286, 291, 54 S.Ct. 399, 401, 78 L.Ed. 798; United States v. West Virginia, 295 U.S. 463, 474, 475, 55 S.Ct. 789, 793, 79 L.Ed. 1546; Ashwander v. Tennessee Valley Authority, 297 U.S. ·288, 324, 56 S.Ct. 466, 472, 80 L.Ed. 688. Where there is such a concrete case *admitting of an immediate and definitive determination of the legal rights* of the parties *in an adversary proceeding* upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. Nashville, C. & St. L. Ry. Co. v. Wallace, supra, 288 U.S. 249, at page 263, 53 S.Ct. 345, 348, 77 L.Ed. 730, 87 A.L.R. 1191; Tutun v. United States, 270 U.S. 568, 576, 577, 46 S.Ct. 425, 426, 70 L.Ed. 738; Fidelity National Bank & Trust Co. v. Swope, 274 U.S. 123, 132, 47 S.Ct. 511, 514, 71 L.Ed. 959; Old Colony Trust Co. v. Commissioner, supra, 279 U.S. 716, at page 725, 49 S.Ct. 499, 502, 73 L.Ed. 918." (Emphasis by the Court.)

That case and the cases herein cited emphasize the prerequisite of "adverse legal interests" in the subject matter of the controversy, the subject of judicial inquiry.

■ There is no power in the courts to declare an act of Congress unconstitutional except in an actual controversy in which such a declaration is indispensable to the determination of the respective rights and liabilities of adverse litigants and the pronouncement of judgment. Liverpool,

etc., Steamship Co. v. Commissioners of Emigration; Chicago, etc., Railway Co. v. Wellman; People of State of California v. San Pablo, etc., Railroad Co.; Muskrat v. United States; Liberty Warehouse Co. v. Grannis; Com. of Massachusetts v. Mellon, all supra; United States v. Johnson, 319 U.S. 302, 63 S.Ct. 1075, 87 L.Ed. 1413; Willing v. Chicago Auditorium Ass'n, 277 U.S. 274, 48 S.Ct. 507, 72 L.Ed. 880. The rights of the one litigant and the liabilities of the other must be so dependent upon or affected by the challenged statute as to render an adjudication on its constitutionality necessary to the ultimate decision and final judgment. Ibid. The present action fails to meet these requirements.

■. When the nature of the present suit, the relations of the immediate parties, and the relief sought, are considered, it appears that the United States is a necessary party whose presence is indispensable to the final adjudication of the only issues here raised, the constitutionality of the Act and the validity of the Orders. State of Texas v. Interstate Commerce Comm., supra; Gregory v. Stetson, 133 U.S. 579, 10 S.Ct. 422, 33 L.Ed. 792; State of Minnesota v. Northern Securities Co., 184 U.S. 199, 235, 22 S.Ct. 308, 46 L.Ed. 499; Gnerich v. Rutter, 265 U.S. 388, 44 S.Ct. 532, 68 L.Ed. 1068; Commonwealth Trust Co. v. Smith, 266 U.S. 152, 45 S.Ct. 26, 69 L.Ed. 219; Garretson v. National Surety Co., 5 Cir., 63 F.2d 847; Chicago, M., St. P. & P. R. Co. v. Adams County, 9 Cir., 72 F.2d 816; State of Washington v. United States, 9 Cir., 87 F.2d 421; Angell v. Schram, 6 Cir., 109 F.2d 380; Baird v. Peoples Bank & Trust Co., 3 Cir., 120 F.2d 1001, 136 A.L.R. 693. Under Section 4 of the Statute, 35 U.S.C.A. § 92, the reduction of royalties effected by the Orders inures only "to the benefit of the Government by way of a corresponding reduction in the contract price to be paid directly or indirectly for such manufacture, use, sale, or other disposition of such invention." There is no consequent advantage thereunder, either direct or indirect, accruing to the defendant. It necessarily follows that under these circumstances an injunction in conformity with the prayers for relief, restraining the defendant's compliance with the Orders, would affect the rights of the United States and leave the only conflicting interest, those of the plaintiff and the United States, in a state of uncertainty.

This absence of an indispensable party defeats the equity jurisdiction of this Court. Ibid.

■ Even if the complaint could be regarded as presenting a "case" or "controversy" within the meaning of Article 3, Section 2 of the Constitution, it must be dismissed for want of equity. The bare allegations that the Act is unconstitutional and the Orders promulgated thereunder are invalid will not sustain the authority of the Court to grant injunctive relief. It is well established that sufficient allegations of "further circumstances" which bring the suit within "some recognized head of equity jurisdiction" is a prerequisite to the exercise of this extraordinary power. Cruikshank v. Bidwell, 176 U.S. 73, 20 S.Ct. 280, 283, 44 L.Ed. 377; Boise Artesian Water Co. v. Boise City, 213 U.S. 276, 29 S.Ct. 426, 53 L.Ed. 796; Southern Railway Co. v. King, 217 U.S. 524, 30 S.Ct. 594, 54 L.Ed. 868; Heald v. District of Columbia, 259 U.S. 114, 42 S.Ct. 434, 66 L.Ed. 852; Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255; Northport Power & Light Co. v. Hartley, 283 U.S. 568, 51 S.Ct. 581, 75 L.Ed. 1275; Matthews v. Rodgers, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447; Champlin Refining Co. v. Corporation Commission, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062, 86 A.L.R. 403; Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143; Yarnell v. Hillsborough Packing Co., 5 Cir., 70 F.2d 435, 92 A.L.R. 1475; Richmond Hosiery Mills v. Camp, 5 Cir., 74 F.2d 200, and other cases herein cited. The allegations of the complaint are patently deficient in this respect and the reasons for this deficiency are evident.

■ The present suit has for its ultimate object the protection of the plaintiff's contractual right to the royalties fixed by the license agreement and due and to become due thereunder. This right, a mere chose in action, is cognizable and enforceable in an action at law. If the Act is constitutional and the Orders issued thereunder valid, the plaintiff may maintain an action against the United States under Section 2 of the Statute, 35 U.S.C.A. § 90, "to recover such sum, if any, as, when added to the royalties fixed and specified in (the Orders), shall constitute fair and just compensation * * * for the manufacture, use, sale or other disposition of the licensed invention for the United States." If the

converse is true, the plaintiff may, notwithstanding the statutory prohibition,[4] recover the royalties fixed by the license agreement in an action at law against the parties liable for their payment; the provisions of the Act, if unconstitutional, could not be successfully interposed as a defense to such an action. Cruikshank v. Bidwell, 176 U.S. 73, 81, 20 S.Ct. 280, 44 L.Ed. 377.

It seems obvious that this action fails to meet the recognized test of equity jurisdiction, to wit, the lack of a plain, adequate, and complete remedy at law. The complaint is devoid of any allegations from which it may be inferred that the available legal remedies are inadequate and is equally devoid of any allegations from which it may be inferred that the plaintiff, if left to his legal remedies, would be exposed to imminent danger of irreparable injury. These prerequisites are indispensable to the exercise of equity jurisdiction. Cruikshank v. Bidwell; Boise Artesian Water Co. v. Boise City; Heald v. District of Columbia; Com. of Massachusetts v. Mellon; Terrace v. Thompson; Northport Power & Light Co. v. Hartley; Matthews v. Rodgers; Champlin Refining Co. v. Corporation Commission; Anniston Mfg. Co. v. Davis, all supra; Cavanaugh v. Looney, 248 U.S. 453, 39 S.Ct. 142, 63 L.Ed. 354; United Gas Co. v. Railroad Commission, 278 U.S. 300, 49 S.Ct. 150, 73 L.Ed. 390; State Corporation Commission v. Wichita Gas Co., 290 U.S. 561, 54 S.Ct. 321, 78 L.Ed. 500.

The complaint is dismissed for the reasons herein stated and the temporary injunction heretofore granted is vacated.

---

[4] Royalty Adjustment Act, § 1, 56 Stat. 1013, 35 U.S.C.A. § 89.